**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JOSEPH J. B.,

                              Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,        No. 1:23-CV-00652
                                        (BKS/CFH)

                              Defendant.
_____


**APPEARANCES:**                       **OF COUNSEL:**

Dennis Kenny Law                 JOSEPHINE GOTTESMAN, ESQ.
288 North Plank Road
Newburgh, New York 12550
Attorney for plaintiff

Social Security Administration       HEETANO SHAMSOONDAR, ESQ.
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**


### REPORT-RECOMMENDATION AND ORDER[1]

    Joseph J. B.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d).  See Dkt. No. 7.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income.  See Dkt. No. 1.  Plaintiff moves for the Commissioner's decision to be vacated and remanded for further proceedings.  See Dkt. No. 9.  The Commissioner moves for the Commissioner's decision to be affirmed.  See Dkt. No. 15.  Plaintiff filed a reply.  See Dkt. No. 16.  For the following reasons, it is recommended that plaintiff's motion be denied, and the Commissioner's decision be affirmed.

## I. Background

On January 17, 2020, plaintiff filed a Title II application for a period of disability and disability benefits, as well as a Title XVI application for supplemental security income, alleging a disability onset date of January 1, 2014.  See T. at 15, 99, 114, 317-27.[3]  The Social Security Administration ("SSA") denied plaintiff's claims initially on November 5, 2020, and upon reconsideration on May 21, 2021.  See id. at 158-75, 180-205.  Plaintiff appealed and requested a hearing, see id. at 208-12, and a virtual hearing was held before Administrative Law Judge ("ALJ") Vincent M. Cascio on May 11, 2022.  See id. at 48-79.  On September 6, 2022, the ALJ issued an unfavorable decision.  See id. at 12-31.  On April 4, 2023, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  See id. at 1-3.  Plaintiff timely commenced this action on June 1, 2023.  See Dkt. No. 1.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  See Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); see also Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); see also Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  See id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through

December 31, 2017[,]" and "ha[d] not engaged in substantial gainful activity since January 1, 2014, the alleged onset date[.]"  T. at 18.  At step two, the ALJ found that plaintiff "ha[d] the following severe impairments: seizure disorder, status post placement of vagal nerve stimulator, anxiety disorder, and major depressive disorder (MDD)[.]"  Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  See id. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can never climb ropes, ladders, or scaffolds; no exposure to unprotected heights or hazardous machinery; cannot operate a motor vehicle; can understand, remember and carry out simple, routine, repetitive work related tasks with only occasional contact with the public, coworkers and supervisors.

Id. at 20.  At step four, the ALJ determined that plaintiff was "unable to perform any past relevant work[.]"  Id. at 30.  At step five, the ALJ concluded that "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform[.]"  Id. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from January 1, 2014, through the date of this decision[.]"  Id. at 31.

## IV. Discussion

**A. The Parties' Arguments**[4]

Plaintiff requests remand for further administrative proceedings, asserting that the ALJ's decision was not supported by substantial evidence. See Dkt. No. 9 at 4. Specifically, plaintiff appears to argue that (1) he suffers from pseudo-seizures and conversion disorder, both of which are psychiatric disorders, and the ALJ failed to fulfill his mandated duty to develop the record as to these disorders; (2) the ALJ's RFC determination did not account for many of plaintiff's documented impairments; and (3) the ALJ's step-five determination is not supported by substantial evidence because the jobs specified by the Vocational Expert ("VE") are contrary to the RFC set forth by the ALJ. See id. at 21-28; see also Dkt. No. 16 at 3-6.

The Commissioner argues, however, that the ALJ's decision is supported by substantial evidence. See Dkt. No. 15 at 3. Specifically, the Commissioner contends that (1) the record was sufficiently developed; (2) the ALJ reasonably identified plaintiff's severe impairments; and (3) the ALJ's step-five finding is supported by substantial evidence. See id. at 6-10.

**B. Duty to Develop the Record**

Although his brief is not clear, plaintiff appears to argue that "he suffers from pseudo-seizures and conversion disorder, both of which are psychiatric disorders," and "the ALJ failed to fulfill his mandated duty to develop the medical evidence" as to these disorders. Dkt. No. 16 at 2. Plaintiff specifically contends that, although the ALJ treated his seizure condition as epilepsy, "there are conflicting diagnoses in the record pertaining to [his] seizure-like condition, which would theoretically change the nature of

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

his RFC determination, and/or determine whether in fact he could perform [substantial gainful activity] at all."  Dkt. No. 9 at 25.  In particular, plaintiff argues that "it is likely that during the relevant time period, [he] may have met or medically equaled the Listings at § 12.07."  Id. at 23.  Plaintiff asserts that the ALJ should "have sought clarification from [his] treating sources or possibly from a testifying medical expert, on the nature of pseudo-seizures and conversion disorder before determining disability" because "[i]t is clear . . . that [the ALJ] had no idea what he was dealing with in terms of [p]laintiff's conversion disorder and pseudo-seizures."  Id. at 24, 26.  Plaintiff contends that "[t]his case must be remanded for the ALJ to develop the medical evidence in order to ascertain the accurate nature of [his] seizure-like condition and its effect on [his] ability to perform substantial gainful activity."  Id.

"Whether the ALJ has met his duty to develop the record is a threshold question" that the Court must determine "[b]efore reviewing whether the Commissioner's final decision is supported by substantial evidence[.]"  Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016).  While an "ALJ has an affirmative duty to develop the record[,] . . . where there are no obvious gaps . . . and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  Evans v. Comm'r of Soc. Sec., 110 F. Supp. 3d 518, 537-38 (S.D.N.Y. 2015) (citing Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999), and Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)) (internal quotation marks omitted); see also Gillard v. Colvin, 5:11-CV-1173 (GLS), 2013 WL 954909, at *2 (N.D.N.Y. Mar. 12, 2013) ("While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit.  Indeed, if all of

the evidence received is consistent and sufficient to determine whether a claimant is

disabled, further development of the record is unnecessary, and the ALJ may make her

determination based upon that evidence.  Consistent with that notion, where there are

no obvious gaps in the record, the ALJ is not required to seek additional information.")

(internal quotation marks and citations omitted).  The ultimate question is whether the

administrative record is "robust enough to enable a meaningful assessment of the

particular conditions on which the [plaintiff] claims disability."  Sanchez v. Colvin, No.

13-CV-6303 (PAE), 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20, 2015) (citations omitted).

"[W]here (as here) the [plaintiff] is represented, 'the ALJ may satisfy the duty to

develop the record by relying on the [plaintiff's] counsel to obtain additional medical

documentation.'"  Clarke v. Comm'r of Soc. Sec., No. 19-CV-7213 (BCM), 2021 WL

2481909, at *14 (S.D.N.Y. June 16, 2021) (quoting Myers ex rel. C.N. v. Astrue, 993 F.

Supp. 2d 156, 163 (N.D.N.Y. 2012)); see, e.g., Jordan v. Comm'r of Soc. Sec., 142 F.

App'x 542, 543 (2d Cir. Sept. 8, 2005) (summary order) (concluding that the ALJ

"fulfilled his duty to develop the administrative record" where the plaintiff's counsel

volunteered to secure missing records from the plaintiff's physician, the ALJ held the

record open to allow him to do so, and counsel never asked for further assistance from

the ALJ); Rivera v. Comm'r of Soc. Sec., 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010)

(holding that the ALJ's "request that [the] plaintiff's attorney obtain the recent treatment

records from Lincoln Hospital fulfilled his obligations with regard to developing the

record"); Martin v. Saul, No. 18-CV-1478 (HKS), 2020 WL 5096057, at *4 (W.D.N.Y.

Aug. 28, 2020) ("[T]he ALJ fulfilled her duty to develop the record by holding the record

open after the hearing to permit the submission of additional evidence") (citation

omitted); <u>Pagan v. Astrue</u>, No. 5:11-CV-825, 2012 WL 2206886, at *8 (N.D.N.Y. June 14, 2012) ("The ALJ granted [the p]laintiff fourteen days to submit the additional information and further stated 'if it takes longer than the 14 days . . . just call in and let me know and then I'll consider it.'  No additional records were forthcoming.  These circumstances fulfilled the ALJ's obligation to develop the record.") (citation omitted).

Here, at the beginning of plaintiff's May 11, 2022, hearing, the following exchange took place between ALJ Cascio and plaintiff's legal representative ("ATTY"):

> ALJ: And is the record complete, Ms. Johnsson?
>
> ATTY: Your Honor, there is one item that we're still waiting for.  They are records from Dr. Kirsch, his psychiatrist for several years.  We have everything as it relates to the actual seizure disorder, all the hospitalizations and his physical health, which does encompass some emotional health, as well.  But Dr. Kirsch, we still have not gotten anything from him.
>
> ALJ: All right.  I saw that in your letter, 17E.
>
> ATTY: Yeah.
>
> ALJ: How long do you think you need for that?
>
> ATTY: I'm going to ask for an additional 30 days.  Sometimes with the doctors—like, especially when—like, this—that we have been trying for a while.  I know he's told [plaintiff] he really wants to help him.  And sometimes once we have the hearing, and we're told that—you know, the Judge can issue a decision at any moment—sometimes that spurns them on a little bit, too.
>
> ALJ: All right. I guess—
>
> ATTY: I think its [sic] implied. So—
>
> ALJ: Yeah.  I'll give you the time.  If you have problems, though let us know.  We could subpoena, and—maybe we could—you know, request them, or the—or subpoena. So, let us know.  Okay?

ATTY: Okay.  Thank you very much.

T. at 54-55.  Plaintiff and the VE proceeded to testify.  See id. at 55-76.  At the

conclusion of the hearing, ALJ Cascio told plaintiff "I'm not going to decide your case

today.  I'm going to wait for further information in the record, that your representative's

going to supply.  Once I do get it, I will decide the case. . . And I'll do that as soon as

possible, once the record is complete."  Id. at 78.  The ALJ also reminded plaintiff's

representative that "the record will remain open [for] 30 days[, which should] give [them]

time . . . to get those outside records[.]"  Id.

In his September 6, 2022, decision, the ALJ noted that "Exhibits 1A thru 20F

were admitted into evidence without objection."  T. at 15.  However, the ALJ proceeded

to explain that

> The claim was placed in post after the hearing so that the
> representative could obtain mental health records from Dr.
> Jonathan Kirsh.  The representative advised on June 15,
> 202[2], that "[W]e originally requested records from Dr. on
> February 9, 2022.  That has now been faxed to him multiple
> times as well as to date four phone calls since hearing, all
> which led to having to leave messages on the providers voice
> mail.  To date we have had no response from Dr Kirsh.
> Therefore, we respectfully request Your Honor subpoena the
> medical records.  This is holding up a decision for the court."
> A subpoena was sent to Dr Kirsh as requested.  Dr. Kirsh
> never responded to the subpoena nor follow ups thereto.  On
> August 4, 2022, a call was made to ask if the representative
> received the records.  No further information or records were
> obtained.  It has been almost 4 months since the hearing and
> the decision of this claim can no longer be delayed.

Id. (citing T. at 422, 434).

Contrary to plaintiff's contentions, "the ALJ more than satisfied [his] duty to

develop the record."  Goulart v. Colvin, No. 3:15-CV-1573 (WIG), 2017 WL 253949, at

*4 (D. Conn. Jan. 20, 2017). As stated above, plaintiff's legal representative assured the ALJ that the record was complete with the exception of Dr. Kirsch's medical records. See T. at 54-55; see also Curtis v. Astrue, No. 11-CV-786 (GTS/VEB), 2012 WL 6098258, at *4 (N.D.N.Y. Oct. 30, 2012) ("Although the ALJ has an affirmative obligation to develop the record, [p]laintiff's counsel certainly has a concomitant responsibility to provide records that he or she promised to procure"), report and recommendation adopted, 2012 WL 6098256 (N.D.N.Y. Dec. 7, 2012). The ALJ then proceeded to hold the record open for plaintiff to submit these records. See T. at 15. On June 15, 2022, plaintiff's legal representative requested the ALJ subpoena the medical records. See id. at 422. The ALJ did so. See id. at 310-13, 433. Follow up calls were subsequently made to Dr. Kirsch's office. See id. at 434. However, no further information or records were obtained. See id. at 15. Moreover, plaintiff's legal representative did not request an additional extension. See, e.g., Clarke, 2021 WL 2481909, at *15 (concluding that the ALJ satisfied her duty to develop the record where the "plaintiff's legal representative was invited to augment the record with additional psychotherapy notes [but s]he did not submit any such notes [and] did not request an extension of time to locate them.") (citations omitted); White v. Kijakazi, No. 1:21-CV-57 (DCP), 2022 WL 4491071, at *5-6 (E.D. Tenn. Sept. 27, 2022) (finding "no error in the ALJ closing the administrative record after affording [the p]laintiff multiple opportunities to submit outstanding records" and the plaintiff "did not request an additional extension" to submit the records). Therefore, after nearly four months, the ALJ closed the record and issued his decision. See T. at 15-31.

Thus, "[a]lthough the ALJ retains a duty to develop the record where a claimant appears with representation, the ALJ reasonably met this burden[.]" Latonya T. E. B. v. Comm'r of Soc. Sec., No. 5:20-CV-462 (CFH), 2021 WL 4033148, at *9 (N.D.N.Y. Sept. 3, 2021); see, e.g., Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 488 n.2 (2d Cir. 2012) (summary order) (determining that the record was "fully developed" where the ALJ "held the record open subsequent to the administrative hearing so that counsel could submit additional evidence, contacted counsel when no further evidence was received, and, at counsel's request, granted an extension of time to obtain evidence"); Jesse M. v. Comm'r of Soc. Sec., No. 1:22-CV-06044 (GRJ), 2023 WL 5013302, at *5 (S.D.N.Y. Aug. 7, 2023) ("[T]he ALJ satisfied her duty.  She held the record open, reminded [the p]laintiff's seasoned counsel of the missing records, and then relied on the representations of counsel regarding their efforts to obtain the records and their inability to locate the records[.]"); Torres v. Colvin, No. 12-CV-6527 (ALC/SN), 2014 WL 4467805, at *6 (S.D.N.Y. Sept. 8, 2014) ("Because the record was held open and [the p]laintiff failed to provide supplemental evidence, the ALJ fulfilled his duty to develop the record."); Farrell v. Comm'r of Soc. Sec., No. 7:12-CV-418 (GLS), 2013 WL 4455697, at *7-8 (N.D.N.Y. Aug. 16, 2013) (concluding that the ALJ, who held the record open for additional documents, fulfilled his duty to develop the record because the ALJ's duty "is not without limit"); Colon v. Apfel, No. 98-CV-4732 (HB), 2000 WL 282898, at *5 (S.D.N.Y. Mar. 15, 2000) ("The ALJ made reasonable efforts to fully develop the record and kept the record open for four additional weeks in order to provide [the] claimant's counsel the opportunity to produce additional evidence.  [The c]laimant's counsel indicated that he would try to provide additional pertinent information to augment the

record. The ALJ is under no further obligation once such a representation is made.")
(citations omitted).

Moreover, plaintiff vaguely asserts there is an "evidentiary gap[ ] about exactly
what kind of [seizure] condition [he] actually has" and the ALJ should "have sought
clarification from plaintiff's treating sources or possibly from a testifying medical expert."
Dkt. No. 9 at 24, 26. However, he "identifies no specific record that was missing[.]"
Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order)
(concluding that the claimant's record supplementation argument was baseless
because she identified no specific record that was missing or explained how it would
affect her case). The undersigned notes that "the record is chock-full of medical
reports" that directly address plaintiff's seizure condition, including his pseudo-seizures.
Willcoxon v. Berryhill, No. 17-CV-02148 (RBJ), 2018 WL 2998894, at *4 (D. Colo. June
15, 2018). Contrary to plaintiff's assertions, the ALJ extensively reviewed, and
discussed, these records in his decision. See Dkt. No. 16 at 4; see also T. at 21-25.
For example, the ALJ noted that

> On October 17, 2019, [plaintiff] was seen for . . . [an] initial
> visit to discuss his seizure-like activity. It was noted that
> [plaintiff] had a history of multiple concussions including a
> motor vehicle accident in 2006. He had significant head
> trauma close brain injury and was in a comatose state. He
> had a second injury in 2008 where he was a motorcycle driver
> thrown from his vehicle. He started to develop seizures in
> 2008. Complicating the matter, [plaintiff] had a history of
> PTSD and significant trauma from prior relationships. There
> was a concern that his seizure-like episodes could be
> pseudoseizures. It was noted that he had anxiety. He had
> more spells during the heat of summer. He was diagnosed
> with pseudoseizures, and he was still on Clonazepam. He
> took Xanax and he was on Desipramine. He had anxiety and
> depression. He followed with a psychiatrist for his PTSD,

depression and anxiety.  He had word finding difficulties.  It
was noted that he was applying for disability.

T. at 22-23 (citing T. at 481-82).

"On this record, the [undersigned] is not persuaded that . . . there was a blatant

lack of medical documentation, or an obvious gap in the record, so as to trigger the

ALJ's obligation to develop it further."  Clarke, 2021 WL 2481909, at *16 (internal

quotation marks and citations omitted); see Eusepi v. Colvin, 595 F. App'x 7, 9 (2d Cir.

2014) (summary order) ("[T]he agency is required affirmatively to seek out additional

evidence only where there are 'obvious gaps' in the administrative record.") (quoting

Rosa, 168 F.3d at 79 n.5); see also Michelle K. v. Comm'r of Soc. Sec., No. 1:21-CV-

1295 (DB), 2024 WL 1856857, at *16 (W.D.N.Y. Apr. 29, 2024) ("[T]he ALJ reasonably

determined that the record was sufficiently developed to make a disability decision.

[The p]laintiff's medical records spanned several years, with treatment notes from

multiple providers and multiple medical opinions, as well as [the p]laintiff's own

statements about her activities of daily living."); Bruce Wayne C. v. Comm'r of Soc.

Sec., No. 5:21-CV-160 (CFH), 2022 WL 1304024, at *10 (N.D.N.Y. May 2, 2022)

("Plaintiff has not identified any gaps in the record that made the record incomplete and

triggered the ALJ's duty to further develop it."); Jennings v. Colvin, No. 13-CV-834, 2014

WL 3748574, at *5 (W.D.N.Y. July 29, 2014) ("The Court finds no obvious gaps in the

record here.  Having reviewed the records from Dr. Hohensee and other treating and

examining sources, the Court finds they contain sufficient diagnostic, examination, and

opinion evidence from which the ALJ could determine, at various points in time, whether

[the plaintiff] was disabled."); Gillard, 2013 WL 954909, at *2 ("[B]ecause the record was

sufficiently robust for the ALJ to make a disability determination, she was not obligated to further develop the record[.]") (citation omitted).

Furthermore, "[p]laintiff has not met his burden to show that he was prejudiced by the absence of [any] allegedly missing records." Lucius R. v. O'Malley, No. 3:22-CV-01312 (MPS), 2024 WL 1200181, at *15 (D. Conn. Jan. 22, 2024); see Tavarez v. Astrue, No. 11-CV-2784 (FB), 2012 WL 2860797, at *3 (E.D.N.Y. July 11, 2012) ("The claimant also bears the burden, when contending that the ALJ failed to develop the record, to show that the missing evidence was significant and harmful to her claim.") (citations omitted); see also Santiago v. Astrue, No. 3:10-CV-937 (CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (explaining that, where "[t]he plaintiff makes only a general argument that any missing records possibly could be significant, if they even exist . . . is insufficient to carry his burden"). To demonstrate such harm, a plaintiff "must show that the additional medical reports would undermine the ALJ's decision," because "[m]ere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." Lena v. Astrue, No. 3:10-CV-893 (SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) (internal quotation marks and citation omitted); Nelson v. Apfel, 131 F.3d 1228, 1235 (2d Cir. 1997) (internal quotation marks and citation omitted); see Jennifer Lynn E. v. Kijakazi, No. 3:20-CV-00695 (TOF), 2021 WL 4472702, at *6-7 (D. Conn. Sept. 30, 2021) (declining to remand for failure to obtain a medical opinion, because "the [p]laintiff has not come forward with sufficient reasons to suppose that [the] opinion 'would undermine the ALJ's decision'") (quoting Lena, 2012 WL 171305, at *9).

Plaintiff appears to argue that, had the record been developed further, the ALJ would have analyzed his impairments under section 12.07 of the Listings and subsequently found that he met or medically equaled this listing.  See Dkt. No. 9 at 23-29.  However, section 12.07 of the Listings requires:

> A. Medical documentation of one or more of the following:
>> 1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
>> 2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
>> 3. Preoccupation with having or acquiring a serious illness without significant symptoms present.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>> 1. Understand, remember, or apply information (see 12.00E1).
>> 2. Interact with others (see 12.00E2).
>> 3. Concentrate, persist, or maintain pace (see 12.00E3).
>> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07.

Although the ALJ did not specifically analyze whether plaintiff met section 12.07, the ALJ did discuss whether plaintiff's mental impairments met sections 12.04 and 12.06 of the Listings.  See T. at 19.  In concluding that plaintiff did not meet or medically equal the criteria of 12.04 and 12.06, the ALJ set forth his analysis under "Paragraph B," finding that plaintiff had: (1) a mild limitation in understanding, remembering, or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, or maintaining pace; and (4) a moderate limitation in adapting or managing oneself.  See id. at 19-20.

As set forth above, plaintiff bears the burden of proving that his impairment or combination of impairments meets or equals a listing.  See supra Subsection II.B; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to show that his impairment matches [or meets] a listing, it must meet all of the specified medical criteria.").  Plaintiff has failed to meet this burden as he has not even argued that the ALJ erred in his Paragraph B analysis.  See T. at 19-20; see generally Dkt. No. 9.  "Consequently, [plaintiff] has failed to show that [he] had an extreme limitation of one, or marked limitation of two, of the four areas of mental functioning, which is required in order to meet section 12.07 of the Listing[s]."  Johnson v. Comm'r, Soc. Sec. Admin., No. 4:21-CV-00118-O, 2022 WL 2919500, at *5 (N.D. Tex. June 27, 2022), report and recommendation adopted, 2022 WL 2918111 (N.D. Tex. July 25, 2022); see Reinesto v. Comm'r, Soc. Sec. Admin., No. 4:22-CV-611-P, 2023 WL 6576299, at *4 (N.D. Tex. Aug. 28, 2023) (concluding that "any error by the ALJ in failing to discuss section 12.07 would be harmless and remand is not required"), report and recommendation adopted, 2023 WL 6173486 (N.D. Tex. Sept. 22, 2023); see also Saleeba v. Berryhill, No. CV H-17-3538, 2019 WL 1386817, at *5 (S.D. Tex. Mar. 5, 2019) (finding the ALJ's failure to mention Listing 12.02 harmless because the paragraph B criteria for Listings 12.03 and 12.04—which the ALJ did discuss—apply equally to Listing 12.02), report and recommendation adopted, 2019 WL 1383030 (S.D. Tex. Mar. 26, 2019); Collazo v. Colvin, No. 13-CV-5758 (RJS/HBP), 2015 WL 9690324, at *13 (S.D.N.Y. Dec. 22, 2015) (explaining that the ALJ's failure to address the plaintiff's possible diagnoses of bipolar disorder and agoraphobia was harmless because it "would not have altered the disability analysis in any meaningful way") (citation omitted), report and

recommendation adopted sub nom. Collazo v. Comm'r of Soc. Sec., 2016 WL 127588 (S.D.N.Y. Jan. 11, 2016).  As a result, it follows that plaintiff has failed to demonstrate that "he was harmed by the alleged inadequacy of the record."  Lucius R., 2024 WL 1200181, at *15; see Gilbert H. v. Saul, No. 5:20-CV-80 (MAD), 2020 WL 6146596, at *5 (N.D.N.Y. Oct. 20, 2020) ("[The p]laintiff's mere assertion that the ALJ should have attempted to secure more records . . . is insufficient to demonstrate a harmful error. [The p]laintiff has thus failed to demonstrate that he was harmed by the alleged inadequacy of the record.").

In sum, the ALJ "adequately developed the administrative record."  Bliss v. Colvin, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015); see, e.g., Schrock v. Schrock, No. 3:12-CV-1898 (MAD/CFH), 2014 WL 2779024, at *10 (N.D.N.Y. June 19, 2014) ("Nevertheless, the ALJ took affirmative steps to obtain additional medical records . . . Therefore, the ALJ's actions cannot constitute a failure to develop the record.").  Remand is, thus, not warranted on this ground.

### D. RFC Determination

Plaintiff also appears to challenge the ALJ's RFC determination.  See Dkt. No. 9 at 27.  The RFC is "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).  "RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms."  Malcolm M. v. Comm'r of Soc. Sec., No. 1:17-CV-0986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (citing Martone, 70 F. Supp. 2d at 150, and 20 C.F.R. §§ 404.1545, 416.945).  "[A]n RFC finding is administrative in nature, not medical, and its

determination is within the province of the ALJ." Curry v. Comm'r of Soc. Sec., 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2)). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150 (citations omitted).

In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. See 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]" Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal quotation marks and citation omitted). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question"; "rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." Elizabeth P. v. Comm'r of Soc. Sec., No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022) (internal quotation marks and citation omitted)). The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence," but "[t]he Court will not reweigh the evidence that was before the ALJ." April B. v. Saul, No. 8:18-CV-682

(DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted).

Here, the ALJ determined that plaintiff retained the RFC to "perform light work . . . except can never climb ropes, ladders, or scaffolds; no exposure to unprotected heights or hazardous machinery; cannot operate a motor vehicle; can understand, remember and carry out simple, routine, repetitive work related tasks with only occasional contact with the public, coworkers and supervisors."  T. at 20.  Plaintiff argues that "[m]any of [his] documented impairments were not accounted for in the RFC," including his

> history of anemia because of internal bleeding for which he has needed transfusions; record entry dated 2/8/21 in which he was described as looking extremely gaunt and pale; throughout the time period, as a result of "seizures," he had his skull cracked open from falling; he banged his knee repeatedly; he has had frequent migraines, for which he takes Botox and Fioricet; he suffers from severe insomnia; he has PTSD resulting in agoraphobia; he has documented poor memory; he has poor impulse control by history; he has wordfinding difficulties; he is unable to drive or be around machinery; he has had a prolonged substance abuse history with a record of multiple detox attempts but is now in sustained remission.

Dkt. No. 9 at 26-27 (citations omitted).  However, such an argument "is meritless, as the ALJ provided a well-reasoned analysis of the record evidence in support of his RFC finding[.]"  Cory W. v. Comm'r of Soc. Sec., No. 1:20-CV-1424 (DB), 2021 WL 5109663, at *3 (W.D.N.Y. Nov. 3, 2021); see Richard B. v. Comm'r of Soc. Sec., No. 1:19-CV-0579 (WBC), 2021 WL 22504, at *6 (W.D.N.Y. Jan. 4, 2021) ("[T]he ALJ's RFC need not contain every limitation [stated in the record].  The ALJ is tasked with resolving conflicts in the record and we defer to the Commissioner's resolution of conflicting

evidence and reject the ALJ's findings only if a reasonable factfinder would have to conclude otherwise.") (internal quotation marks and citations omitted).

First, in reaching such a determination, the ALJ properly evaluated various medical opinions including from Dr. Amber Mitchell, plaintiff's neurologist; Dr. Dennis Noia, a psychiatric consultative examiner; and Dr. Kautilya Puri, a consultative examiner. See T. at 26-28. As the ALJ noted,

> Dr. Amber Mitchell, a Neurologist, reviewed an Interictal EEG, that was completed on . . . December 16, 2019, . . . and the results showed no interictal epileptiform abnormalities detected and no seizure activity was noted. It was further noted that a routine EEG was not able to diagnosis [plaintiff's] condition. However, on the date of discharge, the doctor recommended that [plaintiff] should continue seizure precautions. No driving at that time. He should not swim without supervision or play/work at unprotected heights, and he should avoid use of heavy machinery.

Id. at 26 (citing T. at 494-95). The ALJ found

> [t]his opinion [to be] consistent with the record and supported by evidence in the record, thus making this opinion persuasive because the medical evidence of record showed that on February 10, 2022, [plaintiff] had surgery for placement of vagal nerve stimulator (VNS) system including electrode and generator due to his diagnosis of localization-related (focal) (partial) symptomatic epilepsy and epileptic syndromes with complex partial seizures, intractable, without status epilepticus for which no other surgical intervention was presently recommended.

Id. (citing T. at 1059).

The ALJ also considered an opinion from Dr. Dennis Noia, a psychologist who completed a consultative examination of plaintiff on July 2, 2020. T. at 28 (citing T. at 510-14). The ALJ noted,

> [a]fter the examination, the doctor determined that there was no evidence of limitation in his ability to understand,

> remember or apply simple directions and instructions and use reason and judgment to make work-related decision. He had mild limitation interacting adequately with supervisors, coworkers and the public. There was no evidence of limitation in sustaining concentration and performing a task at a consistent pace. He had mild to moderate limitations sustaining an ordinary routine and regular attendance at work because of anxiety. He had moderate limitations regulating his emotions, controlling behavior and maintaining his well-being. There was no evidence of limitations maintaining his personal hygiene and appropriate attire and being aware of normal hazards and taking appropriate precautions. Difficulties were caused by psychiatric symptoms. The results of the evaluation appeared to be consistent with psychiatric symptoms, and that might interfere with the [plaintiff's] ability to function on a daily basis.

Id. (citing T. at 512-13). The ALJ found the opinion to be "consistent with the record and supported by the examination and the record thus making this opinion persuasive," because

> during the examination, it was noted that his manner of relating, social skills and overall presentation were adequate. He was appropriately dress and well groomed. His thought processes were coherent, and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting. It was also noted that his attention and concentration were intact, and he was able to do counting, simple calculations and Serial 7's from 100. Additionally, the medical evidence showed that during multiple medical appointments it was noted that he was oriented to time, place and person; intact recent and remote memory; intact attention span, concentration and language. Naming and repetition were intact. This evidence is consistent with the doctor's findings and justifies limiting [plaintiff] to work that involves understanding, remembering and carrying out simple, routine, repetitive work-related tasks with only occasional contact with the public, coworkers and supervisors.

Id. (citing T. at 511-12, 878, 972, 986, 990, 994, 999, 1003, 1009).

The ALJ went on to discuss the opinion from Dr. Kautilya Puri, noting

> Dr. Kautilya Puri, a physician in Internal Medicine, completed an Internal Medicine Consultative Examination on [plaintiff] on April 7, 2021. After the examination, the doctor determined that [plaintiff] did not have any objective limitations to communication, fine motor or gross motor activities. The doctor determined that [plaintiff] had mild limitations to his gait and to his activities of daily living on examination during this examination. There was moderate to marked limitations to squatting, bending, stooping and kneeling. It was recommended that he not work from heights or with heavy machinery or be allowed to drive and be seen by a neurologist and a psychologist. He would have moderate to marked limitations to mild exertional on a short-erm [sic] basis. It was recommended that he be seen by an orthopedic surgeon.

T. at 27 (citing T. at 560, 563). The ALJ found Dr. Puri's opinion to be "partially consistent with the examination and partially supported by other evidence in the record" and, therefore, was "partially persuasive." Id.

The undersigned discerns no error in the ALJ's assessment of these opinions. See Byrne v. Berryhill, 284 F. Supp. 3d 250, 260 (E.D.N.Y. 2018) ("An ALJ is permitted to accord greater weight to a consultative examiner's opinion if the conclusions are more consistent with the medical evidence.") (citation omitted); see also Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (finding no error where the ALJ gave great weight to consultative examiner's opinion because it was consistent with record evidence); Matta, 508 F. App'x at 56 (explaining that, although the ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, the ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole); Michelle M. v. Comm'r of Soc. Sec., No. 3:18-CV-1065 (TWD), 2020 WL 495170, at *7 (N.D.N.Y. Jan. 30, 2020) ("[T]he ALJ's analysis of the opinion evidence is supported by substantial evidence in that he

accurately discussed the opinions and provided sufficient reasons for the weight given to each opinion.").

Second, the ALJ also properly considered the objective evidence of record to reach his RFC determination.  See T. at 20.  In particular, the ALJ provided a thorough assessment of plaintiff's medical records dated October 4, 2014, through March 2, 2022.  See id. at 22-27; see also Mack v. Comm'r of Soc. Sec., No. 1:18-CV-00265 (MAT), 2019 WL 1994279 (W.D.N.Y. May 6, 2019) (concluding that the ALJ's RFC determination was supported by substantial evidence where the ALJ provided a thorough assessment of, inter alia, the objective findings of record).  As the ALJ summarized,

> [plaintiff] had a significant history of epilepsy and traumatic brain injuries, as well as depression and anxiety.  However, the medical evidence showed that [plaintiff] had an EEG which showed beta activity but no seizures.  [Plaintiff] also had a VNS placed for preventive measures of his seizures and at his last appointment he had four settings changed.  Thus, [plaintiff] is restricted to light work with additional postural limitations.  Regarding [plaintiff's] mental limitations, he experienced anxiety and depression.  Despite this, he retained intact recent and remote memories, intact attention span and concentration during most examinations.  Therefore, he is capable of understanding, remembering and carrying out simple, routine, repetitive work-related tasks with only occasional contact with the public, coworkers and supervisors.

T. at 29.  The ALJ did not err in this assessment of the objective medical evidence.  See Robert V. v. Kijakazi, No. 3:21-CV-00377 (MPS), 2022 WL 4536838, at *4-5 (D. Conn. Sept. 28, 2022) (finding that substantial evidence supported the ALJ's RFC determination where the ALJ considered the objective medical evidence); see also Michelle P. v. Saul, No. 1:19-CV-01046 (MJR), 2021 WL 791115, at *5 (W.D.N.Y. Mar.

2, 2021) ("This Court declines to disrupt the ALJ's assessment of the objective evidence and defers to the ALJ's right to resolve conflicts in the record.") (citation omitted).

"Plaintiff does not identify any particular portions of the RFC that [he] contends are unsupported."  Nichole K. v. Comm'r of Soc. Sec., No. 1:23-CV-00858 (EAW), 2024 WL 3022592, at *7 (W.D.N.Y. June 17, 2024); see generally Dkt. No. 9.  Rather, as the Commissioner argues, plaintiff's "arguments amount to a disagreement with how the ALJ weighed the evidence, which is within [the ALJ's] province to do."  Nichole K., 2024 WL 3022592, at *7 (citations omitted); see Dkt. No. 15 at 7; see also Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); Tina W. v. Comm'r of Soc. Sec., No. 5:22-CV-15 (MAD), 2023 WL 157952, at *7 (N.D.N.Y. Jan. 10, 2023) ("It is not the Court's function to reweigh the evidence on appeal, only to 'decide whether substantial evidence supports the ALJ's decision.'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order)); Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec., No. 19-CV-9253 (AT/BCM), 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("[T]he reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), report and recommendation adopted, 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021); Kimberley H. v. Comm'r of Soc. Sec., No. 19-CV-6766, 2021 WL 1054373, at *7 (W.D.N.Y. Mar. 19, 2021) (citing White v. Comm'r of Soc. Sec., 572 F.3d 272, 284 (6th Cir. 2009) (finding

"little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence")).

Accordingly, "the ALJ's analysis of the medical and opinion evidence of record indicates a detailed review of such evidence with sufficient explanation to support the RFC determination." Terri G. v. Comm'r of Soc. Sec., No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *9 (N.D.N.Y. Mar. 22, 2019) (concluding that the ALJ's RFC was supported by substantial evidence); see Peter F. v. Comm'r of Soc. Sec., No. 5:20-CV-1003 (ML), 2022 WL 1504174, at *11 (N.D.N.Y. May 12, 2022) ("In light of the ALJ's analysis, this court concludes that her RFC determination was supported by substantial evidence, as summarized above.  Therefore, this court will not disturb the ALJ's RFC determination.") (citations omitted).  Thus, the ALJ's RFC determination is supported by substantial evidence in the record and remand is not warranted on this ground.  See Sarah Ann Z. v. Comm'r of Soc. Sec., No. 1:19-CV-01110 (JJM), 2021 WL 1206516, at *4 (W.D.N.Y. Mar. 31, 2021) (upholding the ALJ's RFC because "'[u]ltimately it is [the p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ,'" yet the "[p]laintiff fail[ed] to articulate what, if any, additional limitations appear in [the evidence] that the ALJ failed to include in the RFC.  Nor does [the] plaintiff identify any other evidence in the record that satisfies her burden to prove more restrictive limitations than those already included in the RFC.") (quoting Beaman v. Comm'r of Soc. Sec., No. 1:18-CV-01344 (EAW), 2020 WL 473618, at *6 (W.D.N.Y. Jan. 28, 2020)).

**E. Step Five Determination**

At plaintiff's hearing, the ALJ questioned the VE regarding potential jobs that a hypothetical individual with plaintiff's RFC could perform.  See T. at 72-75.  Specifically, the following exchange took place:

> ALJ:  . . . I'd like you to assume a hypothetical person of [plaintiff's] age, education and work history.  Further assume that the person has the residual functional capacity to perform a full range of work at all exertional levels, except the person can never climb ropes, ladders or scaffolds, no exposure to unprotected heights or hazardous machinery.  The person cannot operate a motor vehicle.  And the person can understand, remember, carry out simple, routine, repetitive work-related tasks, with only occasional contact with the public, co-workers and supervisors. . . . Would there be any jobs in the national economy for such a person?
>
> VE: Yes, I have examples.  The first title example, assembler, small products I, code 706.684-022.  This strength is light, SVP 2, estimated in the nation, 20,000. . . .
>
> ALJ: Okay.  If I was to give you the same, exact hypothetical, except at the light exertional level, . . . would there be any jobs in the national economy for such a person?  I would think that the assembly, small products I would apply.
>
> VE: It would.
>
> ALJ: All right.  Any other—do you have two more jobs?
>
> VE: I do.  Another title example, office helper, code 239.567-010.  The strength is light, SVP 2, estimated in the nation, 17,000.  Title example, routing clerk, 222.687-022.  The strength is light, SVP 2, estimated in the nation, 125,000.

Id. at 73-74.

In his decision, the ALJ concluded that "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform."  T. at 30.  In particular, the ALJ relied upon the VE's testimony "that given all of these factors [plaintiff] would be able to

perform the requirements of representative occupations such as" "Small Products

Assembler"; "Office Helper"; and "Routing Clerk." Id. at 31; see id. at 72-75. The ALJ

noted that the VE's testimony was consistent with the information contained in the

Dictionary of Occupational Titles ("DOT"). See id. at 31 (citing Social Security

Regulation ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000)).

Plaintiff argues that "the jobs specified by the VE are contrary to the RFC set

forth by the ALJ." Dkt. No. 16 at 5. In particular, plaintiff asserts that that all of "the

specific jobs that the VE found plaintiff capable of . . . require a great deal of contact

with others, and varying and shifting tasks during the workday, which are both

prohibited by the specific limitations set forth in the RFC[.]"[5] Dkt. No. 9 at 27. However,

such an argument is "belied by the DOT definitions for those jobs." Ridley G. v. Comm'r

of Soc. Sec., No. 1:20-CV-773 (CFH), 2021 WL 4307507, at *13 (N.D.N.Y. Sept. 22,

2021); see Jennifer M.K. v. O'Malley, No. 1:23-CV-724 (DJS), 2024 WL 1307008, at *5

(N.D.N.Y. Mar. 27, 2024) (rejecting the plaintiff's argument that the jobs identified by the

ALJ could not be performed by the plaintiff because the VE specifically testified that a

---

[5] Plaintiff also vaguely asserts that "the VE testified that an individual who was off-task 20% of the workday or more, would not be able to do any job available in the national economy. Moreover, a typical employer would tolerate no more than one absence per month. Given the unpredictable nature of Plaintiffs [sic] 'seizure' condition, it is unlikely that he could meet these attendance requirements for very long, if ever." Dkt. No. 9 at 28. However, it is unclear what plaintiff is arguing on this point. The undersigned notes that, although the ALJ raised a hypothetical question to the VE about off-task limitations, the ALJ did not incorporate any such limitations into his RFC determination, nor was he required to. See McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion and accurately reflect the limitations and capabilities of the claimant involved.") (internal quotation marks and citations omitted); see also Stephanie R. v. Comm'r of Soc. Sec., No. 3:23-CV-313, 2024 WL 1615154, at *6 (S.D. Ohio Apr. 15, 2024) ("Plaintiff says the ALJ erred by not including limitations for off-task time and absences from work, because the [VE] testified that employers only tolerate 10% off-task time and one unexcused absence per month. Yet the [VE's] testimony did not mean that [the p]laintiff required these work-preclusive limitations. Rather, the [VE] generally testified as to how much time off-task and how many absences from work employers would tolerate. Here, the ALJ was required only incorporate the limitations he deem[ed] credible.") (internal quotation marks and citations omitted).

person with that RFC could perform those jobs and the ALJ may rely on such testimony from the VE).

The DOT description for Assembler, Small Products I, is as follows:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled.

DOT 706.684-022 (4th ed. 1991), 1991 WL 679050. The DOT description for Office Helper is as follows:

> Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER, OUTSIDE (clerical) 230.663-010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

DOT 239.567-010 (4th ed. 1991), 1991 WL 672232.  The DOT description for Routing Clerk is as follows:

> Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts.  Places or stacks articles in bins designated according to route, driver, or type.  May be designated according to work station as Conveyor Belt Package Sorter (retail trade).  May sort sacks of mail and be known as Mail Sorter (r.r. trans.).

DOT 222.687-022 (4th ed. 1991), 1991 WL 672133.

"The DOT provisions for each position [also] include two types of descriptions that bear on social aspects of the job: (1) an evaluation of whether interactions with people are 'significant' or 'not significant' aspects of the position, and (2) a number category that describes the type of interactions."  Sandra G. v. O'Malley, No. 1:23-CV-6, 2024 WL 1119550, at *9 (M.D.N.C. Mar. 14, 2024); see Habschied v. Berryhill, No. 17-CV-6217P, 2019 WL 1366040, at *9 (W.D.N.Y. Mar. 26, 2019) ("The [DOT] provides a code, numbered 0-8, for the type of social interaction each occupation requires."). Here, the Office Helper position requires only a level 6 for social interaction, and the Small Products Assembler and the Routing Clerk positions require a level 8 for social interaction, and all of these positions are rated "N," indicating that the degree of relation to people is "not significant."  See Ridley G., 2021 WL 4307507, at *13; see also DOT 706.684-022, 1991 WL 679050; DOT 239.567-010, 1991 WL 672232; DOT 222.687-022, 1991 WL 672133.

Level 6 interactions require "Speaking-Signaling: Talking with and/or signaling people to convey or exchange information.  Includes giving assignments and/or

directions to helpers or assistants." DOT App. B (4th ed. 1991), 1991 WL 688701.

"This is nearly the lowest rating possible for interacting with people, on a scale of one to eight in which zero requires mentoring, one negotiating, two instructing, three supervising, four diverting, five persuading, six speaking/signaling, seven serving and eight taking instructions-helping." Southwick v. Astrue, No. 08-CV-540 (TC), 2009 WL 1930173, at *3 (D. Or. June 30, 2009); see Hackett v. Barnhart, 395 F.3d 1168, 1175-76 (10th Cir. 2005) (determining that a "people rating of 6" does not conflict with the plaintiff's RFC to "avoid direct contact with the general public and have only occasional interaction with coworkers"); see also Brown v. Colvin, No. 4:13-CV-368 (DGK/SSA), 2014 WL 1687430, at *5 (W.D. Mo. Apr. 29, 2014) (noting that "social interaction is not important" for an office helper position).

Level 8 interactions require "Taking Instructions-Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed). Helping applies to 'non-learning' helpers." DOT App. B, 1991 WL 688701. "Positions categorized as involving level 8 interaction can be performed by individuals who require limited interaction with supervisors" and others. Whitehorne v. Comm'r of Soc. Sec., No. 19-CV-0256 (MWP), 2020 WL 5077025, at *4 (W.D.N.Y. Aug. 27, 2020 (citing Alie v. Berryhill, No. 4:16-CV-1353 (JMB), 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017) ("Level 8 interaction is compatible with a RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public."), and Sanchez v. Colvin, No. 1:13-CV-02479 (GBC), 2014 WL 5147793, at *16 (M.D. Pa. Oct. 14, 2014) (collecting cases and noting that "a position with this 'people' code is one that can be performed despite limitations in

interacting with supervisors")) (additional citations omitted); see Scott C. v. Comm'r of Soc. Sec., No. 2:20-CV-00109, 2021 WL 2682276, at *5 (D. Vt. June 30, 2021) ("Courts have held that [l]evel 8 interaction is compatible with a[n] RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public.") (internal quotation marks and citations omitted).

"Further, the DOT description for each position also describes whether the interaction with people is a "significant" or "not significant" part of the position." Sandra G., 2024 WL 1119550, at *9. "Jobs that rank the interaction-with-others function as 'not significant' adequately account for limitations on a claimant's ability to interact with the public, co-workers and supervisors." Kane v. Saul, No. 3:18-CV-746 (HEH), 2019 WL 7562760, at *15 (E.D. Va. Aug. 20, 2019) (citing Praylow v. Colvin, No. 9:15-CV-3557 (TMC/BM), 2016 WL 11200706, at *35-36 (D.S.C. Sept. 7, 2016) (concluding that jobs requiring only "taking instructions-helping" at a not-significant level accounted for the plaintiff's limitation to no interaction with the public); Wiles v. Colvin, No. 9:14-CV-2766 (TLW/BM), 2015 WL 9684908, at *21-22 (D.S.C. Aug. 31, 2015) (finding that the office helper job appropriately accounted for limitations on contact with co-workers and the public, because the DOT description listed interaction with people as "not significant"), report and recommendation adopted, 2016 WL 109889 (D.S.C. Jan. 8, 2016); and Arsenault v. Astrue, No. 08-CV-269-P-H, 2009 WL 982225, at *3 (D. Me. Apr. 12, 2009) (holding that, when a job requires "taking instructions-helping" at a not-significant level, the job accounts for individuals limited to only insignificant or occasional interaction with the public and/or co-workers and supervisors)), report and recommendation adopted, 2020 WL 130134 (E.D. Va. Jan. 10, 2020); see Larsen v. Astrue, No. 1:10-CV-0093

(JLT), 2011 WL 3359676, at *15 (E.D. Cal. Aug. 3, 2011) ("Jobs whose level of interaction is defined as 'not significant' in the DOT, have been held to be appropriate for workers with the RFC to have 'limited' or 'occasional' coworker contact.") (citations omitted).

As noted above, plaintiff retains the RFC to "carry out simple, routine, repetitive work related tasks with only occasional contact with the public, coworkers and supervisors." T. at 20. Given the DOT definitions for the Small Products Assembler, Office Helper, and Routing Clerk positions, there is no basis to conclude that these jobs conflict with plaintiff's RFC. See Chaffin v. Colvin, 999 F. Supp. 2d 468, 475 (W.D.N.Y. 2014) ("Upon review of the record, there was no conflict between the VE's testimony and the DOT and the ALJ did not err in relying on this aspect of the VE's testimony."); see also Negron v. Saul, No. 19-CV-07547 (KMK/JCM), 2021 WL 465768, at *25 (S.D.N.Y. Feb. 8, 2021) (finding "no conflict between the VE's testimony and the D.O.T. that would render reliance on the VE's opinion improper").

To the extent plaintiff argues that the ALJ's step-five determination was erroneous because the DOT is outdated, such an argument is meritless. See Dkt. No. 9 at 27-28; see also Dkt. No. 15 at 10-11. Specifically, plaintiff contends that the relevant job descriptions located in the DOT were last updated over forty years ago, and the "O*NET [would] provide[ ] updated information as to how the performance of these jobs has changed over the years and as to what physical and mental requirements they now have."[6] Dkt. No. 16 at 6; see Dkt. No. 9 at 27-28. However, the DOT "remains an

---

[6] "O*NET" refers to the Occupational Information Network, which is an online "database of occupational characteristics and worker requirements information across the U.S. economy." U.S. DEP'T OF LABOR, O*NET, https://www.dol.gov/agencies/eta/onet (last visited Aug. 28, 2024); see, e.g., Russ v. Comm'r of

accepted vocational resource per Social Security Administration policy."  Waldvogel v. Comm'r of Soc. Sec., No. 6:16-CV-0868 (GTS), 2017 WL 3995590, at *14 (N.D.N.Y. Sept. 11, 2017).  Moreover, "[p]laintiff does not point to any caselaw from within the Second Circuit holding the VE's reliance on the DOT's job descriptions is improper." Strong v. Berryhill, No. 17-CV-1286F, 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019).  "In fact, numerous courts have rejected the notion that ALJs must discount the DOT in favor of O*NET."  Jennifer M.K., 2024 WL 1307008, at *5 (citing Dennison v. Berryhill, No. 17-CV-1059F, 2019 WL 2088506, at *9 (W.D.N.Y. May 13, 2019) (collecting cases), and Ryan v. Astrue, 650 F. Supp. 2d 207, 218 (N.D.N.Y. 2009)).  The undersigned is persuaded by this notion, particularly because "unlike the DOT, O*NET does not appear in the Social Security Rulings as an approved source nor one with which the VE's testimony must be consistent."  Strong, 2019 WL 2442147, at *6; see Rubin v. Kijakazi, No. 22-CV-4697 (PED), 2023 WL 2016300, at *28-29 (S.D.N.Y. Feb. 15, 2023) (rejecting the plaintiff's argument based upon information obtained via the O*NET and concluding that "the Vocational Expert did not err in relying on the DOT descriptions and the ALJ appropriately adopted the vocational expert's findings").

Accordingly, the ALJ did not err at step five.  See Lisa B. v. Comm'r of Soc. Sec., No. 5:21-CV-493 (CFH), 2022 WL 1473277, at *15 (N.D.N.Y. May 10, 2022) ("[T]he ALJ found that pursuant to SSR 00-4p, the VE's testimony was consistent with the DOT. The Court finds no error in th[is] conclusion[ ] and remand is not warranted on this ground."); see also Marrero v. Kijakazi, No. 20-CV-3872 (PED), 2021 WL 4198221, at *7 (S.D.N.Y. Sept. 15, 2021) ("[P]laintiff has not shown that the record evidence

---

Soc. Sec., 582 F. Supp. 3d 151, 166 (S.D.N.Y. 2022) (explaining that the O*NET is another data source that provides job requirement data).

precludes a reasonable mind from finding that [she] could perform a substantial number of jobs that exist in the national economy."); Ridgeway v. Colvin, No. 12-CV-6548T, 2013 WL 5408899, at *10 (W.D.N.Y. Sept. 25, 2013) ("Because there is substantial evidence in the record to support the ALJ's assessment of [the p]laintiff's RFC, the ALJ is entitled to rely on the vocational expert's testimony that [the p]laintiff could perform other jobs that exist in significant numbers in the national economy."). As such, remand is not warranted on this ground.

It is, therefore, recommended that plaintiff's motion be denied, and the Commissioner's decision be affirmed.


### V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that the plaintiff's motion (Dkt. No. 9) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v.

Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

      Date:  August 29, 2024
              Albany, New York

Christian F. Hummel
U.S. Magistrate Judge